UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF MARYLAND

| | |
|---|---|
| UNITED STATES OF AMERICA | * |
| | * |
| v. | *   CRIMINAL NO.  BPG-16-2254 |
| | * |
| HAROLD T. MARTIN, III | * |
| | * |
| Defendant | * |

**********

# UNITED STATES' RESPONSE TO MOTION TO REVIEW DETENTION ORDER

The United States of America, by and through its undersigned counsel, hereby opposes the Defendant's request to be released from his current pretrial detention status and for reasons states:

1. The Defendant was arrested at the time of the court-authorized searches of his home, his vehicle, and his person on August 27, 2016.  He was charged by Criminal Complaint on August 29, 2016 with the theft of government property, specifically an astounding quantity of highly classified information, in violation of 18 U.S.C. § 641, and the unlawful removal and retention of classified information in violation of 18 U.S.C. § 1924.  The maximum penalties for these violations are imprisonment for ten years and one year, respectively.  Additionally, it is important and highly relevant to note that the Defendant and his counsel have known almost from the outset that the Government intends to seek additional charges pursuant to the Espionage Act, 18 U.S.C. § 793(e), each count of which would carry a maximum term of imprisonment of ten years upon conviction.  Thus, the Defendant is fully aware that upon conviction, which given the evidence thus far uncovered and analyzed (analysis of the vast quantities of information seized, both documentary and digital, is an ongoing and lengthy process), is extremely likely, he

faces sentencing ranges that may exceed his life expectancy. His incentive to flee is extremely strong.

2. Although he initially waived his right to have a detention hearing, the Defendant decided to exercise that right and filed a motion to that effect. On October 21, 2016, United States Magistrate Judge A. David Copperthite conducted a thorough detention hearing, at the conclusion of which he decided by a preponderance of the evidence that after considering all of the relevant statutory factors of 18 U.S.C. § 3142(g)(1)-(4), the Defendant represented a serious risk of nonappearance and that no condition or combination of conditions the Court could impose would be sufficient to guard against that risk. Judge Copperthite's thoughtful determination was correct.

3. The Defendant accurately states that a review of a determination to detain him is subject to *de novo* review by this Court pursuant to 18 U.S.C. § 3145. That is not to say that this Court, or the parties, are precluded from reviewing Judge Copperthite's findings and reasons therefor. The Defendant concedes this point by citing to portions of the record that he believes lend support to his position. In thus assessing Judge Copperthite's determinations, it is abundantly clear that he made the only decision a judicial officer could under the facts and circumstances of this matter. These will be briefly addressed herein and, with the Court's permission, supplemented at the scheduled hearing.

4. Once the government has asserted a valid reason for requesting the detention of a defendant, as it has here, specifically that there is a serious risk that the defendant will flee the jurisdiction if released [*see* 18 U.S.C. § 3142(f)(2)(A)], a court is directed to focus on four factors in making a detention determination. If, after hearing proffered evidence pertaining to each of these factors, the court finds by a preponderance of the evidence that no condition or

combination of conditions will reasonably assure the defendant's appearance, the defendant shall be detained. These factors, set forth at 18 U.S.C. § 3142(g)(1)-(4), are: (1) the Nature and Circumstances of the Offense, (2) the Weight of the Evidence, (3) the History and Characteristics of the Defendant, and (4) the Nature and Seriousness of the Danger Posed by Release.

   5.  In spite of the clear statutory language, the Defendant, citing only an opinion of the Third Circuit in support, argues that this Court is not entitled to receive evidence provided by the government as to subsection (g)(4) and must ignore the very real and extreme danger to the community should he be released. The Defendant does not, however, cite *United States v. Stewart,* 19 Fed. Appx. 46 (4th Cir. 2001), an unpublished but nevertheless informative opinion that involved a defendant charged with non-violent fraudulent conduct. The Fourth Circuit clearly stated in that case that the "factors to be considered in determining whether to release a defendant pending trial are set forth in 18 U.S.C. § 3142(g) and include" all four subsections. *Id.* at 48. The Fourth Circuit further noted that "[f]or pretrial detention to be imposed on a defendant, the lack of reasonable assurance of either the defendant's appearance or the safety of others or the community, is sufficient; both are not required." *Id.; See also United States v. Begay,* 315 Fed. Appx. 53 (10th Cir. 2009); *United States v. Stanford,* 341 Fed. Appx. 979 (5th Cir. 2009). Even if this Court does not consider the fourth factor under 18 U.S.C. § 3142(g), however, and excludes from analysis the considerable wealth of information regarding the extreme danger to the community should the Defendant be released, there exists an overwhelming amount of evidence that no condition or combination of conditions can be imposed that would reasonably assure the appearance of the Defendant. Indeed, this was why Judge Copperthite decided to detain the Defendant.

a. **Nature and Circumstances of the Offense**

The Defendant is charged with the theft of an enormous quantity of classified information. Over the course of two decades of employment within the U.S. Intelligence Community as a contractor, it appears that his criminal conduct was pervasive, and that the Defendant willfully violated not only the laws of the United States, but also his duty and the oath he swore to protect the information with which the government entrusted him in reliance upon that oath.

Although still undergoing review, it is estimated that a substantial portion of the fifty terabytes of digital information seized from the Defendant contains highly classified information. Thousands of hard-copy documents containing highly classified information were also seized from him. This information, much of it classified at the Top Secret/Sensitive Compartmented Information (TS/SCI) level, is considered by the Intelligence Community to be irreplaceable once compromised. The Top Secret classification itself represents the Intelligence Community's assessment that its unauthorized disclosure "reasonably could be expected to cause exceptionally grave damage to the national security." *See* Executive Order 13526 § 1.2(a)(1).. As an example, information stolen by the Defendant includes numerous names of intelligence officers of the United States. These officers operate under cover outside the United States, and putting the secrecy of their identities at risk by removing information about those identities from appropriate, secure storage not only endangers the lives and safety of those officers and the individuals with whom they work, but also risks exposure of American intelligence operations. Additionally, numerous intelligence sources and methods for highly sensitive intelligence operations would be rendered nearly useless should they fall into the wrong hands.

Critically, the Defendant knew this. He was trained numerous times on the risks attending the mishandling of classified information, and he knew that the oath he swore to protect that information was necessary to protect life and safety as well as U.S. national security. Even crediting his own admission through counsel (*see, e.g.,* Transcript of October 21, 2016 Hearing at 16), neither his sworn oath to his country nor his ingrained knowledge of the possible consequences of compromise prevented him from pursuing his own goals instead of honoring his promise and his duty.

    b. **Weight of the Evidence**

Much of the evidence currently available to the government consists of the vast quantity of highly classified information seized from the Defendant's home, a shed on his property, his person, and even his vehicle. There are notes on many of the documents in the Defendant's own handwriting, and much of the digital information is clearly traceable to the Defendant. In fact, classified information was seized from the Defendant himself at the time of the search. Additionally, even though initially lying about having taken classified information from his employer, the Defendant, during a non-custodial interview on August 27 prior to his arrest, when confronted with the documents or digital media that had been seized, admitted that he had, in fact, taken them. Further, the willfulness of the Defendant's conduct is without question. He has possessed a security clearance since 1988 (he received his first security clearance as an active duty member of the United States Navy from 1988 through 1992, and thereafter as a member of the Naval Reserve until 1996) and signed numerous documents wherein he agreed to take care with the sensitive, classified information with which he was entrusted. He received countless trainings which further instructed him regarding the strict security protocols with regard to

classified information. In spite of all of this, the Defendant engaged in a twenty-year course of criminal conduct that flew in the face of his training, his oath, and his duty.

    c. **History and Characteristics of the Defendant**

As stated above, the Defendant has possessed a security clearance for twenty-eight years. For the last twenty years, that clearance has been at the TS/SCI level. The Defendant has been employed by eight different contracting companies that assigned him to numerous agencies within the Intelligence Community over that period of time. Additionally, also as noted above, and as pointed out by the Defendant in his motion as something for which he deserves credit, he served on active duty in the Navy for four years and another four years in reserve status. Ordinarily, such employment would inure to the benefit of an individual, as it would here but for the fact that the Defendant betrayed the trust placed in him by the government over the last twenty years by continually stealing huge amounts of classified information. His employment, therefore, is not a mitigating factor, but is actually the means by which he committed his offenses. Further, should he be released, the Defendant has no viable means of supporting himself, since he obviously cannot obtain employment in the area where he has earned a living for two decades. Moreover, Judge Copperthite's findings regarding the Defendant's possible mental health issues (including an indication to his wife at one point of being suicidal), disposition to binge drinking, and possession of ten firearms, all but one or two of which he concealed from his wife are also significant, as is Judge Copperthite's observation that the Defendant may have lived as "two persons" and is a highly intelligent person capable of flight.

    d. **Nature and Seriousness of Danger Posed by Release**

The danger posed to the national security of the United States, and thereby to the community, is so serious as to be difficult to articulate sufficiently. For twenty years the

Defendant has worked within the Intelligence Community on numerous highly classified projects, thereby acquiring great knowledge of many of this nation's most protected secrets. The Intelligence Community reserves some of its highest protections for information that is not only classified Top Secret, but is also further divided into sensitive compartments for which additional clearances are required. At this time, because he is detained, the Defendant is restricted to communicating with a very limited number of people. His communications, except for those with his legal team, are monitored. Likewise, he has absolutely no access to computers or other technology. The reasons for these restrictions are obvious. Any future dissemination of classified information by him to others would cause exceptionally grave damage to the national security of the United States. These precautions—limiting and monitoring his communications—are only possible if he is detained.

Simply put, there is absolutely no realistic way to prevent such future dissemination by an order of this Court. Any such court order would only be able to be enforced after the fact of a breach by the Defendant. And then it would be too late. The damage to the national security would have been accomplished. The Defendant asks this Court to rely upon his word that he will obey this Court's release conditions. The Defendant gave similar assurances to numerous U.S. Intelligence Community agencies over twenty years, and the result of the government placing that trust in the Defendant is now before this Court. By his own admissions (after his initial denials), there are no grounds upon which any part of the government should rely upon the Defendant's word.

6. The Defendant has lost his employment and has no prospects of obtaining employment within his area of expertise. He cannot be hired by the U.S. Intelligence Community, the federal government, or federal contractors. As counsel has indicated, the

Defendant is struggling to meet financial obligations, and he is under emotional stress. While the Defendant likely perceives that he has few prospects for success in this case or in his future professional life in the United States, his vulnerability, paired with his knowledge of and possible access to highly sensitive classified information, make him a prime target for recruitment by foreign intelligence services or others that could provide him with protection and stability outside the United States in exchange for further betraying the trust this nation placed in him. As a result, the risk that he will flee if released is exceptionally high.

7. It is abundantly clear that no condition or combination of conditions may be imposed that will reasonably assure the Defendant's appearance at future judicial proceedings and, therefore, most respectfully, his detention status must be maintained.

Respectfully submitted,

Rod J. Rosenstein
United States Attorney

By: _____/s/_____
Harvey E. Eisenberg
Assistant United States Attorney
Chief, National Security Section
36 South Charles Street, 4th Floor
Baltimore, Maryland 21201
(410) 209-4800

_____/s/_____
Zachary A. Myers
Assistant United States Attorney

_____/s/_____
David C. Aaron
Trial Attorney
U. S. Department of Justice
National Security Division
950 Pennsylvania Avenue, NW
Washington, DC 20530
(202) 307-5190

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that a copy of this Response was delivered via ECF to James Wyda, Federal Public Defender, and Deborah L. Boardman, First Assistant Federal Public Defender, this 27th day of October, 2016.

_____/s/_____
Harvey E. Eisenberg